UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Joseph M. McKnight, Jr.,** | ) | Civil Action No.: 4:24-cv-5050-JD |
| Plaintiff, | ) | |
| v. | ) | **COMPLAINT** |
| **American Express Travel Related Services Company, Inc.,** | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Joseph M. McKnight, Jr., for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

4. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e and 1681s-2(b), which are two of the cornerstone

provisions of the FCRA.

5. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Joseph M. McKnight, Jr., is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant American Express Travel Related Services Company, Inc. ("American Express") is a New York company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, C T Corporation System, 2 Office Park Ct., Suite 103, Columbia, SC 29223. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

## FACTUAL ALLEGATIONS

11. In August 2022, Plaintiff learned he had been the victim of identity theft. Plaintiff obtained a copy of his credit report, which was rife with fraudulent accounts for loans, credit cards, and utility bills that had all been opened in his name without his consent or knowledge.

12. Specifically, Plaintiff's August 26, 2022, Experian credit report was reporting AMEX Account number 3499921388915913 (hereinafter referred to as "the Account") as a charged-off account, with a balance of $5,866 and a past due amount of $5,165, as belonging to Plaintiff. Plaintiff never opened the Account with Defendant, nor did he ever apply to have a credit card issued to him by Defendant.

13. On August 29, 2022, Plaintiff filed an Identity Theft Report with the Federal Trade Commission.

14. In September 2022, Plaintiff learned that his estranged wife, Mary Lee McKnight, had opened numerous accounts and loans in his name without his permission.

15. On September 13, 2022, Plaintiff filed an Identity Theft Intake Form with the South Carolina Department of Consumer Affairs.

16. On September 14, 2022, Plaintiff filed a police report with the Florence County Sheriff's Office concerning the fraudulent accounts appearing on his credit reports.

17. On or about September 28, 2022, Plaintiff sent a written dispute letter to Defendant via priority mail. In his letter, Plaintiff informed Defendant he had been the victim of identity theft and that the Account had been opened with Defendant in his name without his authorization or knowledge. With his letter, Defendant included a copy of the Identity Theft Report, police report, South Carolina Department of Consumer Affairs report, and a copy of his South Carolina Driver's License. Plaintiff never received a response from Defendant to his letter.

18. After not receiving a response from Defendant to his dispute letter, Plaintiff then called Defendant. The representative was not able to provide Plaintiff with any information concerning the Account because the phone number and email provided by Plaintiff did not match the phone number and email address associated with the Account in Defendant's system.

19. Thereafter, Plaintiff required surgery which kept him out of work on disability from October 12, 2022, through April 1, 2023.

20. Once Plaintiff was well enough to go back to work, he again began working to correct the fraudulent accounts appearing on his credit reports.

21. On November 15, 2023, Plaintiff obtained a new copy of his Experian credit report which showed that Defendant was continuing to report the fraudulently opened Account as a charge-off account belonging to Plaintiff, with $5,866 written off and $5,715 past due.

22. On November 15, 2023, Plaintiff also obtained a copy of his Equifax credit report. Defendant was also reporting the Account on Plaintiff's Equifax credit file as a charged off account belonging to Plaintiff with a balance of $5,816, a past due amount of $5,715, and a date of first delinquency of November 2021.

23. On or about November 15, 2023, Plaintiff obtained a copy of his TransUnion credit report. Defendant was reporting the Account to Plaintiff's TransUnion credit file as a charged-off account belonging to Plaintiff with a balance of $5,816.

24. On or about December 5, 2023, Plaintiff sent a dispute letter to Experian (**"First Experian Dispute"**) stating the Account was a fraud account opened in his name without his knowledge and asked that it be removed from his credit report. With his dispute, Plaintiff included his name, address, date of birth, and Social Security number. Experian received this dispute on December 9, 2023, and forwarded same to Defendant.

25. On or about December 5, 2023, Plaintiff sent a dispute letter to Equifax (**"First Equifax Dispute"**) stating the Account was a fraud account opened in Plaintiff's name without his knowledge and asked that it be removed from his credit report. With his dispute, Plaintiff included his name, address, date of birth, and Social Security number. Equifax received this dispute on December 8, 2023.

26. On or about December 5, 2023, Plaintiff sent a dispute letter to TransUnion (**"First TransUnion Dispute"**). In his letter, Plaintiff informed TransUnion he had been the

victim of identify and fraud and that he had learned that his estranged wife had opened numerous accounts and loans in his name without his permission. Plaintiff disputed the Account as not his account, opened in his name without his knowledge and asked that it be removed from his credit report. TransUnion received Plaintiff's dispute on December 8, 2023, and thereafter forwarded same to Defendant.

27.     On or about December 11, 2023, Plaintiff received a letter from Equifax requesting additional information to verify Plaintiff's identity and address, which Plaintiff provided by certified mail on January 26, 2024. Equifax received the identify documents on January 29, 2024.

28.     On or about December 13, 2023, in response to Plaintiff's First Experian Dispute, Experian sent Plaintiff correspondence stating it didn't appear to them that Plaintiff had sent the dispute letter and, therefore, they would not be taking any action on his alleged request.

29.     On or about December 14, 2023, Equifax sent Plaintiff a letter stating they had added an initial fraud alert on his Equifax credit file.

30.     On or about January 5, 2024, Plaintiff received Equifax's Investigation Results showing Equifax deleted the American Express Account from Plaintiff's Equifax credit file.

31.     On or about January 5, 2024, Plaintiff received TransUnion's Investigation Results, wherein TransUnion informed Plaintiff that the Account Plaintiff disputed had been verified as accurate by Defendant. As a result, the disputed Account continued to be reported on Plaintiff's TransUnion credit file as a charged-off account belonging to

Plaintiff.

32.    In January 2024, in response to Experian's December 13, 2023 letter, Plaintiff called Experian to inform them that he had in fact sent the dispute letter.

33.    On or about February 1, 2024, Plaintiff sent a second dispute letter to TransUnion stating the Account had been fraudulently opened in Plaintiff's name without his permission **("Second TransUnion Dispute")**. With his dispute, Plaintiff again included his name, address, date of birth, and Social Security number. TransUnion received the Second TransUnion Dispute on February 6, 2024.

34.    On or about February 9, 2024, TransUnion sent Plaintiff correspondence stating they would not be reinvestigating his dispute as they had previously investigated the disputed Account and the Defendant had verified the Account was accurate.

35.    On or about March 22, 2024, Plaintiff sent Experian a second dispute by certified mail ("**Second Experian Dispute**"). In this letter, Plaintiff stated he had tried multiple times to contact Experian by phone but was never able to connect to a live person, nor had Experian ever responded to his dispute. Plaintiff again informed Experian the Account was a fraudulent account opened in Plaintiff's name without his knowledge and asked that it be removed from his credit report. Plaintiff included a copy of his driver's license with his letter. Experian received this dispute on March 25, 2024, and forwarded same to Defendant.

36.    On or about March 22, 2024, Plaintiff sent TransUnion another dispute via certified mail ("**Third TransUnion Dispute**"), wherein Plaintiff again stated that he had been the victim of identity theft and fraud, and that numerous accounts and loans had been opened

7

in his name by his estranged wife without his permission, one of which was the Account. With his dispute, Plaintiff included a copy of the police report. TransUnion received Plaintiff's dispute and thereafter forwarded same to Defendant.

37. On or about April 10, 2024, Defendant's Global Fraud Protection Services sent Plaintiff a letter stating it had received his dispute regarding the Account. Defendant stated it had reviewed its records and was unable to accept his claim since he "benefitted from the use" of the Card.

38. On or about April 18, 2024, Plaintiff received the results of TransUnion's alleged investigation into the Third TransUnion Dispute, wherein TransUnion informed Plaintiff that Defendant had again verified the Account as accurate and updated the Historical Trended Data. As a result, the fraudulent Account continued to be reported on Plaintiff's TransUnion credit report as belonging to Plaintiff.

39. On or about April 25, 2024, Plaintiff sent another letter to Experian via certified mail **("Third Experian Dispute").** Plaintiff again informed Experian that he had been the victim of identity theft, and that the Account was a fraudulent account opened in his name without his knowledge. Plaintiff requested the Account be removed from his credit file and provided a copy of his driver's license. Experian received this dispute on April 29, 2024, and forwarded same to Defendant.

40. On or about May 3, 2024, Plaintiff sent a dispute letter to Defendant's Fraud Operations via certified mail. In his letter, Plaintiff informed Defendant that their statement that he benefited from the use of the card was not true. As he had previously informed Defendant in September of 2022, he again stated he had been the victim of identity theft

and that his estranged wife had opened numerous accounts and loans in his name without his permission. Plaintiff requested Defendant send him a copy of every document, application and/or any other paper completed to open the Account, as well as all charge slips, checks, or other charges made on the Account, copies of all payments, and every writing, email, document, note, etc., that Defendant reviewed to determine there was no fraud.

41. Defendant received Plaintiff's May 3, 2024 dispute on May 7, 2024.

42. On May 14, 2024, Defendant sent Plaintiff a letter informing him his recent inquiry was "currently under investigation by [its] U.S. Fraud Department," and Defendant would notify Plaintiff in writing upon completion of the review.

43. On or about May 23, 2024, Defendant sent Plaintiff a letter stating that it had reviewed its records and was unable to accept his claim of fraud since he benefitted from use of the card.

44. Defendant never responded to Plaintiff's request for documents showing how the Account was opened, all of the charges made on the Account, any payments made on the Account, or any other documents Defendant reviewed to determine there was no fraud.

45. Since September 2022, when Defendant was first notified the Account was fraudulent, Defendant has continued to report false, libelous, inaccurate, and defamatory information regarding the Plaintiff to the national credit bureaus and to numerous third parties. While Defendant has reported the fraudulent Account as belonging to Plaintiff on his credit reports, said false information was provided to and/or viewed by Verizon Wireless, USAA, JPMCB Card, Reprise Financial, Axcess Financial/CNGO, Elan Fin

Svcs, Sarma Collections Inc, Revco Solutions Inc, Mercantile Adjustment Bur, Natl Credit Adjusters, NCB Management Services, Relay Tallahassee ME via Ectallahassee Mem HC, and Alltran Financial LP FO.

46. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-0952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
### (Fair Credit Reporting Act)

47. The Plaintiff adopts the averments and allegations of paragraphs 11 through 46 hereinbefore as if fully set forth herein.

48. Defendant violated 15 U.S.C. §1681s-2(b) by failing to investigate the accuracy of the information reported by the Defendant to the consumer reporting agencies.

49. On at least one occasion within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate after receiving notice that the Plaintiff disputed the information said Defendant had provided to a consumer reporting agency.

50. On at least one occasion within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

51. As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including but not limited to: damage to reputation and

credit reputation, lost credit opportunities, embarrassment, humiliation, frustration, stress, anxiety, loss of sleep, worry, headaches, physical sickness and pain, and mental anguish.

52.    The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a consumer reporting agency.

53.    The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

54.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Defendant in an amount to be determined by a jury pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT TWO
### (Fair Credit Reporting Act)

55.    The Plaintiff adopts the averments and allegations of paragraphs 11 through 54 hereinbefore as if fully set forth herein.

56.    On one or more occasions within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) and (D) by publishing the Defendant's inaccuracies within Plaintiff's credit files with the credit reporting agencies by failing to correctly report results of an accurate investigation to each credit reporting agency.

57.    Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate,

incomplete, false, and misleading results of the investigation, if any, to at least one consumer reporting agency.

58.     Defendant violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the account the subject of this action was inaccurate, incomplete, false, and misleading.

59.     As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), the Plaintiff suffered actual damages, including but not limited to: damage to his credit and credit reputation, lost credit opportunities, and incurred out of pocket losses. Additionally, Plaintiff suffered humiliation, frustration, stress, anxiety, loss of sleep, worry, headaches, physical sickness and pain, and mental anguish, as well as damages for attorneys' fees.

60.     The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1681n. In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

61.     The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees, pursuant to 15 U.S.C. §1681n and §1681o.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.     Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.     Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.     Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C.

§1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.      For such other and further relief as the Court may deem just and proper

            */s/ Penny Hays Cauley*
            Penny Hays Cauley, Fed. ID No. 10323
            Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

            */s/ Penny Hays Cauley*
            Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
American Express Travel Related Services Company, Inc.
c/o C T Corporation System – Registered Agent
2 Office Park Ct., Suite 103
Columbia, SC 29223